UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADVANCED TECHNOLOGIES GROUP, INC.,

Plaintiff,

-against-

L3HARRIS TECHNOLOGIES, INC. *formerly known as* L3 TECHNOLOGIES, INC.,

Defendant.

25-CV-06650 (VEC) (RFT)

**ORDER**

**ROBYN F. TARNOFSKY, UNITED STATES MAGISTRATE JUDGE:**

Pending before the Court is the application by Defendant to permit it to maintain five categories of materials on a "No Justak" basis: (1) Design Detail Documents, (2) Cameo Data Files, (3) Test Procedures and Reporting Documents, (4) Schedule-Related Documents, and (5) RFP Responses. (ECF 73.)[1] Plaintiff opposes the application. (ECF 75.) This order addresses only the first two categories. I issued a separate order (ECF 80) on categories three through five. For the reasons set forth below, the application as directed to the first two categories of documents is **GRANTED IN PART**, in that the Design Detail files that are computer aided design ("CAD") files and the Cameo Data files may retain their No Justak designation. The parties are **ORDERED** to meet and confer on whether they can agree to redactions of the non-CAD files reflecting design detail that would permit the unredacted versions to be designated as No Justak and the redacted versions to be designated as confidential.

1 A No Justak designation is proper for "technical documents related to the APG . . . that the Producing Party believes to be of such sensitivity that Mr. [John] Justak should not be shown the materials." (ECF 42, Protective Order ¶ 8(d).)

I.

**Factual Background and the Parties' Arguments**[2]

This case involves a type of ram-air turbine ("RAT") called an air-driven power generator ("APG"), which powers a Next Generation Jammer-Low Band ("NGJ-LB") pod that will be deployed on Navy jets. (ECF 1, Compl. ¶¶ 10-21.) The Navy awarded contracts to Defendant to design and manufacture the jammer pod; Defendant originally subcontracted with Plaintiff to design the APG, but Defendant subsequently opened a competitive RFP process and awarded CFD Research ("CFDR") rather than Plaintiff the subcontract to design and manufacture the APG. (*See id.* ¶¶ 168, 170, 195, 240.) Plaintiff alleges, among other claims, that Defendant misappropriated Plaintiff's APG technology and shared the technology with CFDR. (*See id.* ¶¶ 302-23.)

Defendant has produced over 90 thousand documents to Plaintiff, of which 7,621 are designated No Justak under the parties' protective order. (*See* ECF 73, Def.'s Letter-Mot. at 2.) Of those documents, 1,645 are CAD Documents and 4,765 are Cameo Data Files that together form two models. (*See* ECF 73-1, Declaration of Christopher A. Klimmek ("Klimmek Decl.") ¶¶ 9, 11.) Defendant filed an application to maintain the No Justak status of those documents, supported by the Klimmek Declaration (ECF 73-1), a declaration of Brandon Armstrong (ECF 73-2), and exhibits.[3] Defendant argues that its No Justak designations are necessary to prevent

---

[2] Unless stated otherwise, this order omits internal quotation marks, citations, and quotations from quoted text.

[3] The exhibits include a supplemental interrogatory response (ECF 73-3), a July 6, 2020 email from John Teixeira to Justak containing Mr. Teixeira's resume (ECF 73-4), a May 16, 2024 through June 6, 2024 email chain between Justak and Byron Lund, copying others (ECF 73-5), a May 7, 2024 through June 3, 2024 email chain between Tess Oxenstierna, Hillary Morrison, and

serious competitive harm to CFDR, which has been a competitor of Plaintiff in the past and which Defendant states will compete with Plaintiff for future defense contracts; Defendant explains that CFDR has spent millions of dollars developing and testing its RAT and APG designs. (*See* ECF 73, Def.'s Letter-Mot. at 3-4.)

Defendant selected examples of five categories of CFDR's non-public design work to submit to the Court for in camera review in connection with Defendant's application to maintain the No Justak designation. There are two such categories that I address in this order, Design Detail Documents and Cameo Data Files.

Defendant says that Design Detail Documents show the internal design of CFDR's APG, including its "unique design of the inlet and exit guide vanes, actuators, and other components." (*Id.* at 3.) Defendant submitted five Design Detail Documents for in camera review, along with a declaration by a CFDR program manager, Brandon Armstrong. The documents contain images of the APG with its component parts, including images of how the parts fit together and operate together, which Defendant argues could be used by a competitor to replicate CFDR's design or otherwise compete unfairly with CFDR. (*See* ECF 73-2, Armstrong Decl. ¶¶ 11-13, 14, 18.) Defendant argues that the 1,675 CAD files designated as No Justak are particularly sensitive, because "they enable dynamic review of the APG, permitting the user to virtually disassemble the APG and view each component." (ECF 73, Def.'s Letter-Mot. at 3.)

---

Justak, attaching financial information and a presentation (ECF 73-6), a September 10, 2026 email from Ben McArthur to Andrew George, Michael Calhoon, and Klimmek, copying others (ECF 73-7), and a transcript of a conference from April 2, 2026 before Judge Caproni (ECF 73-8).

Defendant says the Cameo Data "models the operation of every component of the APG and how it meets contractual requirements, . . . describ[ing] in detail the logic of CFDR's control system and software controlling its APG." (*Id.*) Defendant submitted two documents containing Cameo Data for in camera review. (*See id.*) Defendant argues that Cameo Data would enable a knowledgeable engineer to create software and controls that function in the same way as the software controlling CFDR's APG. (*See* ECF 73-2 Armstrong Decl. ¶¶ 11(g), (n), (o), 17.)

Plaintiff filed an opposition to Defendant's application to maintain the No Justak status of all 7,621 documents, supported by exhibits and a declaration by Charles Ray Crain (75-5), and a declaration of John Justak (ECF 75-8, Justak Decl.).[4] Plaintiff maintains that the only information that should be designated as No Justak is information about CFDR's turbine, which is not at issue in this case, and that Defendant should redact that information from the documents designated as No Justak, so that Plaintiff can show the redacted documents to John Justak, Plaintiff's principal investor and president. (ECF 75, Pl.'s Letter-Opp. at 7.)

Plaintiff argues that no one other than Mr. Justak can assist counsel with understanding the documents and recognizing allegedly stolen documents. (*See id.* at 5.) In support, Plaintiff points to documents "in which the copying of Mr. Justak's technology is undeniable at a high level, but where the surrounding, technically dense material requires Mr. Justak's input and

---

[4] The exhibits include CFDR's designs (ECF 75-1, Ram Air Turbine/ Generator/ Cooling Technology November 21, 2017), Plaintiff's February 2022 designs (ECF 75-2, Plaintiff's Next Generation Jammer – Low Band Capability Block 1 Final Report 02/22/2022), Plaintiff's July 2022 designs (ECF 75-3, Plaintiff's Next Generation Jammer – Low Band Capability Block 1 Final Report 07/06/2022), Plaintiff's APG designs (ECF 75-4), a November 4, 2025 through December 8, 2025 email chain between the parties' legal counsel (ECF 75-6), and a transcript of a conference from April 2, 2026 before Judge Caproni (ECF 75-7).

analysis," and concludes that "[t]agging Mr. Justak's technology as No Justak is absurd and is impeding [Plaintiff's] ability to litigate this case." (*Id.* at 4.) Plaintiff also asserts that Defendant has been over designating documents as No Justak at the request of CFDR and has not supported its designations, although Plaintiff's counsel states that they "cannot possibly evaluate or address Defendant's examples of No Justak documents without Mr. Justak's help." (*Id.* at 5.)

Plaintiff also argues that there is no risk of competitive harm in showing the documents to Mr. Justak because he is near retirement and does not currently intend to bid on future APG subcontracts and because he is an upright individual who would honor the terms of the confidentiality order. (*See id.*) Plaintiff relies on *L3 Communications Corp. v. Jaxon Engineering & Maintenance, Inc.*, 863 F. Supp. 2d 1066, 1091 (D. Colo. 2012), to argue that in similar circumstances, Defendant's predecessor company took the position that it was appropriate for a plaintiff to rely on an employee expert to assist counsel with understanding the commercially sensitive documents. (ECF 75, Pl.'s Letter-Opp. at 4-5.)

Defendant responds that Plaintiff has not demonstrated a need to show Mr. Justak the No Justak documents, in part because another engineer could assist counsel with reviewing the documents without causing competitive harm, and in part because the information, including models showing the operation of CFDR's software is tangential to Plaintiff's claims. Defendant further contends that Plaintiff's assertion that there are similarities between Plaintiff's designs and CFDR's does not necessarily reflect misappropriation, because both independent derivation and reverse engineering are permissible.

Defendant also argues that Plaintiff has not substantiated its assertion that there is no competitive harm to showing No Justak documents to Mr. Justak because Plaintiff has not established that it will not bid on future APG subcontracts or that Mr. Justak will not assist others in doing so; and that even if Mr. Justak has the best of intentions, seeing the No Justak technical documents will likely influence both his testimony as a fact witness and his approach to designing and manufacturing APGs. (*See* ECF 73, Def.'s Letter-Mot. at 4-5.) And Defendant insists that Plaintiff's redaction proposal is unduly burdensome and disproportionate to the needs of the case. (*See id.* at 7.)

Defendant takes the position that *L-3 Communications,* on which Plaintiff relies, is distinguishable for three reasons. First, it does not apply the controlling standard in this Circuit, which requires balancing competitive harm against the plaintiff's claimed need for employee review, *Jane St. Grp., LLC v. Millennium Mgmt. LLC*, No. 24-CV-2783 (PAE), 2024 WL 2833114, at *1 (S.D.N.Y. June 3, 2024), and instead considered only whether the plaintiff needed to rely on an employee as its technical advisor. *L3 Communications*, 863 F. Supp. 2d at 1091. Defendant asserts that the serious risk of competitive harm means that Plaintiff must retain an independent expert. (*See* ECF 73, Def.'s Letter-Mot. at 6.)

Second, *L-3 Communications* permitted the use of an employee expert based on uncontroverted evidence that the only other individuals with the necessary expertise worked for competitors or the government, *see* 863 F. Supp. 2d at 1092, while Plaintiff has not shown that Mr. Justak is the only available expert. (*See* ECF 73, Def.'s Letter-Mot. at 6.) Third, *L-3 Communications* permitted the employee expert access to a small handful of documents that were not highly sensitive, *see* 863 F. Supp. 2d at 1074, 1092, and not the "thousands of internal

and highly sensitive technical design and testing materials" at issue here. (*See* ECF 73, Def.'s Letter-Mot. at 6-7.)

**II.**

**Legal Standard**

Both parties analogize the No Justak designation to an attorneys' eyes only designation, and so I set out the legal principles covering attorneys' eyes only designations. "The disclosure of confidential information on an attorneys' eyes only basis is a routine feature of civil litigation involving trade secrets." *In re City of N.Y.,* 607 F.3d 923, 935 (2d Cir. 2010). The attorneys' eyes only designation addresses the risk that "a party in a commercial suit obtains a competitor's trade secrets." *Id.* at 936. Courts recognize that a party in litigation should not have to share its most sensitive information with its competitor. (*See* ECF 73-8, Apr. 2, 2026 Conference Tr. at 9 ("[T]he most sensitive of information shouldn't have to be shared with your competitor . . . .").)

Attorneys' eyes only protection is appropriate because "it is difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well intentioned the effort may be to do so." *Koninklijke Philips N.V. v. iGuzzini Lighting USA, Ltd.,* 311 F.R.D. 80, 83 (S.D.N.Y. 2015). Relatedly, precluding a key fact witness in a case involving intellectual property from seeing a competitor's documents protects against the risk that the witness' recollection will be tainted by the review. *See Steuben Foods, Inc. v. GEA Process Eng'g, Inc.*, No. 12-CV-0904S, 2013 WL 12238482, at *3 (W.D.N.Y. July 2, 2013).

**III.**

**Analysis**

Defendant has demonstrated that the Cameo Data Files are documents of the highest sensitivity, because those documents, if shared with a competitor, would allow the competitor to replicate software and controls that function in the same way as the software controlling CFDR's APG. (*See* ECF 73-2 Armstrong Decl. ¶¶ 11(g), (n), (o), 17.) Defendant has also demonstrated that the CAD Design Detail Documents are of the highest sensitivity, because CAD models permit "dynamic review of the APG, permitting the user to virtually disassemble the APG and view each component" (ECF 73, Def.'s Letter-Mot. at 3); sharing such models with a competitor would allow the competitor to copy the design of the APG and improve on it. (ECF 73-2, Armstrong Decl. ¶¶ 11-14, 18.) While non-CAD images are also somewhat sensitive, I conclude that there is a qualitative difference between such images, which provide snapshots of the APG design, and CAD models, which allow a viewer to take apart the APG virtually and examine the component parts from all angles and see in three dimensions how the components fit together and work together.

Plaintiff's response – that Defendant has asserted that the No Justak materials are competitively sensitive without explaining how (*see* ECF 75, Pl.'s Letter-Opp. at 5, 7), is contradicted by the discussion in the Armstrong Declaration of how a competitor could use those materials to compete unfairly with CFDR. (*See* ECF 73-2, Armstrong Decl. ¶¶ 11-14, 18.) Plaintiff's next argument – that it cannot respond to Defendant's arguments about competitive sensitivity because it would need Mr. Justak's input to do so (*see* ECF 75, Pl.'s Letter-Opp. at 5) – is also unpersuasive. While Mr. Justak may be the person best situated to assist, Plaintiff has

not established that no one else would have any insight into the competitive sensitivity or not of the CAD Design Detail Documents and the Cameo Files. Plaintiff's argument that none of the No Justak documents should maintain their designation, because Defendant helped CFDR to steal Plaintiff's designs (*see id.* at 1-4) also misses the mark, because it assumes the truth of Plaintiff's allegations that Defendant misappropriated Plaintiff's intellectual property. Plaintiff has not yet proved its case.

Plaintiff's further contention that Mr. Justak is not truly a competitor because he is of retirement age and is not currently planning to compete with CFDR in the future (*see id.* at 5) is insufficient to justify requiring Defendant to share its most commercially sensitive information with him. As Defendant notes, Mr. Justak could change his mind about causing Plaintiff to compete with CFDR for a future contract. (*See* ECF 73, Def.'s Letter-Mot. at 4.) Even crediting Plaintiff's assertion that Mr. Justak is an upstanding person who would not make impermissible use of any confidential information shared with him, there is a high risk that Mr. Justak would be influenced by such information. *See Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*, No. 15-CV-2044 (AJN) (RLE), 2016 WL 4618972, at *4 (S.D.N.Y. Sept. 2, 2016) (awarding a more stringent designation in the case of a competitor because "it is difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so"); *Koninklijke Philips,* 311 F.R.D. at 83 (same).

I therefore weigh Plaintiff's demonstrated need for Mr. Justak to review CAD Design Detail Documents and Cameo Data Files against the high risk of competitive harm to CFDR in sharing such materials with Mr. Justak. While Plaintiff persuasively argues that Mr. Justak, as

the inventor of the technologies at issue with unique knowledge of Plaintiff's technology versus other RAT options that exist, is the best situated person to identify which of Defendant's documents include designs allegedly stolen from Plaintiff (*see* ECF 75, Pl.'s Letter-Opp. at 5), Plaintiff has not demonstrated that another engineer could not assist counsel with reviewing the CAD Design Detail Documents and Cameo Data Files. Mr. Justak explains that the field of high-speed turbomachinery engineering and, specifically, wind-driven power generation for ducted pod applicants is exceptionally narrow. (*See* ECF 75-8, Justak Decl. ¶ 9.) Mr. Justak opines that an engineering degree is necessary but not sufficient to understand APG technology, because understanding APG technology requires "designing, building, testing, and failing with this hardware over many years." (*Id.* ¶ 10.) An expert, however, would only need sufficient understanding of APG technology to assess whether CFDR's CAD Design Detail Documents and Cameo Data Files depict technology copied from Plaintiff. There is no indication that Mr. Justak is the only person who can carry out that task.

For the foregoing reasons, I conclude that the likely harm to CFDR in sharing CAD Design Documents and Cameo Data Files with Mr. Justak outweighs Plaintiff's need to share those materials with him.

## Conclusion

Defendant's application as directed to the Design Detail files and Cameo Data files is **GRANTED IN PART**, in that the CAD Design Detail files and the Cameo Data files may retain their No Justak designation. The parties are **ORDERED** to meet and confer on whether they can agree to redactions of the non-CAD Design Detail files that would permit the unredacted versions to be designated as No Justak and the redacted versions to be designated as confidential; the parties shall file a letter on the docket by **October 9, 2026** informing the Court of the results of their meeting and conferring.

DATED: October 5, 2026
New York, NY

SO ORDERED.

______________________________
**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**